IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**REVEREND BRYAN A. KRUMM, CNP,**

    Plaintiff,

vs.                                                          No. 13cv0562 RB/SMV

**ERIC HOLDER**, Attorney General of the United States;
**MICHELE LEONHART**, Administrator of the United States
Drug Enforcement Administration;
**KATHLEEN SEBELIUS**, Secretary United States Department
of Health and Human Services;
**FRANCIS S. COLLINS, M.D.**, Director of the National
Institutes of Health;
**NORA D. VOLKOW, M.D.**, Director of the National
Institute on Drug Abuse;
**STEVEN YARBROUGH**, Acting United States Attorney for
the District of New Mexico,

    **Defendants**.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Defendants' *Motion to Dismiss*, filed September 4, 2013 [Doc. 16]. Having considered the parties' submissions and the relevant law, the Court will grant the motion.

### I.    BACKGROUND

For the past 16 years, Plaintiff, who states that he is the "Director of New Mexicans for Compassionate Use, and Bishop of Medicine for the Zen Zion Coptic Orthodox Church," Compl. at 4, has repeatedly challenged the validity and application of federal laws related to the smoking and possession of marijuana. Marijuana is classified under Schedule I of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-971, thus its use and possession are criminalized under federal law. The Attorney General, who has delegated this responsibility to the Drug Enforcement Administration ("DEA"), may modify placement of a substance on the drug

schedules by relying on medical and scientific expertise provided by the Department of Health and Human Services ("DHHS") after information has been collected in regard to eight factors. *See* 21 U.S.C. §§ 811-12; 28 C.F.R. §§ 0.100(b) & 0.104, Appendix to Subpart R, sec. 12; 21 C.F.R. § 1308.43(d); *Gonzales v. Oregon*, 546 U.S. 243, 243 (2006) ("The Attorney General may add, remove, or reschedule substances only after making particular findings, and on scientific and medical matters, he must accept the findings of the Secretary of Health and Human Services . . ."). *Americans for Safe Access v. DEA,* 706 F.3d 438, 441 (D.C. Cir. 2013).  If, after considering all studies, evaluations, recommendations, and other relevant data, the Administrator finds "substantial evidence" that the scheduling of a drug should be modified, the Administrator must initiate appropriate rulemaking proceedings.  *See* 21 U.S.C. § 811(b); 21 C.F.R. § 1308.43(e).  Judicial review of any rescheduling decision is exclusively committed to the jurisdiction of the Courts of Appeals.  *See* 21 U.S.C. § 877.  Nevertheless, Plaintiff has repeatedly attempted to circumvent this statutory process by bringing suit in this and other district courts to force the rescheduling of marijuana by judicial fiat.

In 1998 Krumm was one of about 160 named plaintiffs who raised various challenges to the CSA as it relates to smoking marijuana for medical purposes, and the Government's application of that Act.  *See Kuromiya v. United States*,  37 F. Supp. 2d 717 (E.D. Pa. March 10, 1999).  In response to Krumm's and the other plaintiffs' arguments, the district court held that the CSA is a valid exercise of Congress' powers under the commerce clause; that the sections of the CSA that prohibit marijuana use do not violate the Ninth or Tenth Amendments; that the CSA does not violate the plaintiffs' right to privacy; and that the placement of marijuana in a different drug category from a synthetic drug containing marijuana's active ingredient does not violate equal protection.  *See id.*  The Court held that "there is no fundamental right of privacy to

select one's medical treatment without regard to criminal laws, and courts have consequently applied only rational review to regulations affecting these matters." *Id.* at 726.  The court subsequently dismissed the plaintiffs' remaining claim, which was based on their argument that equal-protection principles were violated when the government ended an experimental federal "compassionate use program," thereby excluding the plaintiffs from the program, in circumstances in which a few long-term participants were allowed to remain in the program and were furnished with marijuana.  *See Kuromiya v. United States*, 78 F. Supp. 2d 367 (E.D. Pa. Dec. 1, 1999).  After reviewing the summary-judgment record, the Court held that "the government had a rational basis for its decision not to supply marijuana to the plaintiffs [including Krumm] through the compassionate use program." *Id.* at 368.  Although the plaintiffs initially filed an appeal, their appeal was ultimately dismissed.

In 2002, Krumm signed a petition for reclassification of marijuana submitted to the DEA by another individual, Jon Gettman, on behalf of the Coalition to Reschedule Cannabis.

In 2008, again represented by counsel, Krumm brought suit for declaratory and injunctive relief in this Court, complaining that the DEA still had not acted on the Gettman petition.  He argued that scheduling of marijuana as a prohibited substance is unlawful because it "has accepted medical use in treatment in 12 states," and alleged that "Krumm's primary care physician has . . . referred him to the Lynn Pierson Therapeutic Research Program, through which Krumm would be able to personally use medically prescribed marijuana." *Krumm v. Holder*, No. 8cv1056, 2009 WL 1563381, *2 (D. N.M. May 27, 2009) (*Krumm I*).  As in the case at bar, Krumm sought

> preliminary and permanent injunctions forbidding . . . interfere[ence] with State medical cannabis programs; (ii) a judgment declaring that the CSA's regulatory scheme does not permit marijuana to remain in Schedule I; (iii) a judgment declaring that the principle of equal protection protects states' rights to produce,

>  possess, distribute, and use marijuana for medical purposes; [and] (iv) an order to the [DEA] to take marijuana out of Schedule I and to place marijuana into an appropriate schedule.

*Id.* at *3-4*; compare* Compl. at ¶ 84.  In addition, Krumm now seeks a writ of mandamus to force the DHHS to "conduct a thorough evaluation of Cannabis using a panel which shall include public members with expertise on Medical Cannabis and familiarity with patients in State Medical Cannabis programs, to determine which schedule, if any, cannabis should be placed;" a writ of mandamus to force the "NIH to fund FDA approved studies investigating the therapeutic value of cannabis;" and a writ of mandamus to force the "NIDA to supply cannabis to FDA approved studies investigating the therapeutic effect of cannabis." Compl. at ¶ 84.

After extensive briefing and hearings, this Court dismissed *Krumm I* for lack of subject-matter jurisdiction, holding that "[t]he nature of the administrative process that Congress provides for rescheduling in the CSA, viewed in the context of the overall administrative scheme for dealing with controlled substances, reveals that Congress intended the process set forth in 21 U.S.C. § 811 to be the exclusive means by which an interested party can seek rescheduling." 2009 WL 1563381, *8.  Assuming that Krumm could have "piggybacked" onto Gettman's petition to the DEA, the Court held that, because no ruling had yet been made regarding that petition, "even if he is a party, he has not exhausted his administrative remedies." *Id.* at *10.  The Court held that it does "not have subject-matter jurisdiction in this case" because Krumm "must exhaust his administrative remedies by following the procedures prescribed in the CSA", and that "once Krumm has exhausted the administrative process, he must seek judicial review, not in this or any other federal district court, but rather in the appropriate court of appeals." *Id.* at 13.  Krumm did not appeal from that final order, and it is binding upon him.

In 2010, Krumm filed his own petition for rescheduling of marijuana with the DEA. The DEA has not yet ruled on that petition. Compl. ¶¶ 22-24. The DEA recently denied Gettman's petition. Compl. ¶ 29; *see* 76 Fed. Reg. 40552 (July 8, 2011) (Denial of Petition to Initiate Proceedings to Reschedule Marijuana). The Coalition sought review in the United States Court of Appeals for the District of Columbia Circuit, contending that the DEA's denial was arbitrary and capricious. *See Americans for Safe Access v. D.E.A.,* 706 F.3d 438, 440 (D.C. Cir. 2011), *cert. denied*, 134 S. Ct. 267 (Oct 07, 2013). The D.C. Circuit noted that the DEA's regulations "define 'currently accepted medical use' to require" a showing of five factors. *Id.* at 391. Those factors are: "(1) The drug's chemistry must be known and reproducible; (2) There must be adequate safety studies; (3) There must be adequate and well-controlled studies proving efficacy; (4) The drug must be accepted by qualified experts; and (5) The scientific evidence must be widely available." *Id.* at 449 (internal quotation marks omitted). In conducting its investigation, the DHHS reported to the DEA that the five-part test was not satisfied because

> marijuana's chemistry was not "known and reproducible" as there had not been "a complete scientific analysis" of its components. *Id.* at 40,552, 40,560. In addition, although there was ongoing research, there were no studies of sufficient quality to assess "the efficacy and full safety profile of marijuana for any medical condition." *Id.* at 40,560. Further, there was "a material conflict of opinion among experts" as to medical safety and efficacy, thereby precluding a finding that qualified experts accepted marijuana as a medicine. *Id.* Additionally, the raw research data typically were not available in a format that would allow "adequate scientific scrutiny of whether the data demonstrate safety or efficacy."

*Id.* at 442. The "DHHS' recommendations are binding on the DEA insofar as they rest on scientific and medical determinations. 21 U.S.C. § 811(b)." *Id.* at 450. The DC Circuit concluded that the DEA's denial was not arbitrary or capricious. *Id.* at 441.

In his pro-se Complaint at bar, despite this Court's prior rulings that it does not have subject-matter jurisdiction over his requests for relief, Krumm insists that this Court has

jurisdiction under the Declaratory Judgment Act. Compl. at ¶4. He contends that he is raising two legal issues: whether New Mexico's acceptance of "the medical use of Cannabis precludes the Schedule I placement of Cannabis in the [CSA]," and whether "the Defendants may lawfully prevent implementation of the Lynn and Erin Compassionate Use Act[1] (and other medical cannabis programs) by prohibiting the solely intrastate production and distribution of Cannabis to patients in those Programs." Compl. at ¶ 7. Krumm extensively criticizes the DEA's determination and analysis of the Gettman petition on many levels, and reargues many points that the DC Circuit rejected. See Compl. ¶¶ 29-33 and pp. 25-27.

## II.   ANALYSIS

### A.  The Court has no jurisdiction to order the DEA to reschedule marijuana.

As noted above, Krumm seeks a judgment declaring that the "CSA's regulatory scheme does not permit Cannabis to remain in Schedule I due to its current accepted medical use by 20 states" and a writ of mandamus "ordering that the DEA remove Cannabis from Schedule I." Compl. ¶ 84. This Court has already clearly instructed Krumm that the Attorney General, through the DHHS and the DEA, has the exclusive authority to reschedule marijuana, and that the Court has no jurisdiction to order the DEA to do so. See *Krumm I*, 2009 WL 1563381, *8-*13. And the Court has already rejected Krumm's legal argument that, because "marijuana has accepted medical use [in several states, it] is therefore mis-scheduled as a matter of law" because that

> analysis [] does not fully take into account the scheme that Congress has laid out for rescheduling a controlled substance. Under the CSA, the body making the rescheduling decision must receive scientific and medical data from the Secretary of Health and Human Services. The CSA does not contemplate that state legislatures' determinations about the use of a controlled substance can be used to bypass the CSA's rescheduling process.

---

[1]   Krumm states that he authored the Act. Compl. at ¶ 9.. It is codified at N.M.S.A. § 30-31C-1

*Id.* at * 9.  These holdings are *res judicata* on the issue.  The Court also has no jurisdiction to re-review the DEA's decision or the DC Circuit's decision regarding the DEA's denial of the Gettman petition.  Insofar as Krumm was, indeed, a "signatory" on that petition, the DEA's and DC Circuit's findings and conclusions are also now legally binding upon him.

> **B.  The Court cannot order the Attorney General or any United States Attorney not to prosecute Krumm.**

Krumm seeks an injunction "forbidding the Defendants . . . from again interfering [sic] State Medical Cannabis Programs, including its production, distribution, possession and use" and a "judgment declaring that the constitutional principle of equal protection of the law protects the State's right to produce, possess, distribute, and use Cannabis for medical purposes."  Of course, Krumm's Complaint states no facts indicating that any of the Defendants have actually ever "interfered" with New Mexico's medical-marijuana program[2], and Krumm has no standing whatsoever to request any relief on behalf of the State of New Mexico.

---

[2]  The Court takes judicial notice that it is the Attorney General's policy not to focus on the criminal prosecution of medical providers or participants who comply with state medical-marijuana programs.

> On October 19, 2009, Deputy Attorney General Ogden issued a "Memorandum for Selected United States Attorneys."  The Ogden Memo acknowledges that some States have enacted laws authorizing the medical use of marijuana, and it provides guidance to U.S. Attorneys within those States as to how to exercise their prosecutorial discretion consistent with Department of Justice priorities.  Specifically, the Memo states that, while "[t]he prosecution of significant traffickers of illegal drugs, including marijuana, ... continues to be a core priority," U.S. Attorneys "[a]s a general matter ... should not focus federal resources in [their] States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana."  Accordingly, the Memo advises that prosecutors focus their resources on illegal drug trafficking activity (including marijuana) involving factors such as firearms, violence, sales to minors, and significant amounts of marijuana, *i.e.,* factors that are inconsistent with compliance with applicable state law.  Notably, however, the Memo does *not* purport to legalize or reclassify marijuana:

7

> [T]his memorandum does not alter in any way the Department's authority to enforce federal law, including laws prohibiting the manufacture, production, distribution, possession, or use of marijuana on federal property. *This guidance regarding resource allocation does not "legalize" marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter.* Nor does clear and unambiguous compliance with state law or the absence of one or all of the above factors create a legal defense to a violation of the Controlled Substances Act. Rather, this memorandum is intended solely as a guide to the exercise of investigative and prosecutorial discretion.

Ogden Memo 2 (emphasis supplied). On June 29, 2011, the Department of Justice issued a follow-on memorandum from Deputy Attorney General James M. Cole (the "Cole Memo"). The Cole Memo reaffirmed the guidance issued in the Ogden Memo, and reiterated that "[p]ersons who are in the business of cultivating, selling or distributing marijuana, and those who knowingly facilitate such activities, are in violation of the Controlled Substances Act, regardless of state law." Cole Memo 2. It further noted that "[t]he Ogden Memorandum was never intended to shield such activities from federal enforcement action and prosecution, even where those activities purport to comply with state law." *Id.*[FN5]

> [FN5.] After the close of briefing in this case, on August 29, 2013, the Department of Justice issued yet another memorandum from Cole relating to marijuana enforcement under the CSA. Although the parties have not addressed this memorandum, it does not in any way alter our conclusions.

*United States v. Canori*, 737 F.3d 181, 183-85 (2d Cir. 2013) (holding that the assistant attorney general's "decision to exercise prosecutorial discretion by not prosecuting uses of marijuana consistent with state law, in the circumstances presented here, does not conflict with the principles of federalism, preemption, or the supremacy of federal law").

On March 4, 2014, the Deputy Administrator of the DEA and the United States Attorney General for Colorado issued a joint statement to Congress' Committee on Oversight and Government Reform again setting out the United States' policy on enforcing federal criminal laws against individuals who are complying with state medical and/or recreational use laws. The statement says:

> The marijuana enforcement guidance issued on August 29, 2013 (August 29th memorandum), advises federal prosecutors in the exercise of their prosecutorial discretion to focus on and continue enforcement of federal priorities, such as preventing sales of marijuana by criminal enterprises, preventing violence and the use of firearms in the cultivation and distribution of marijuana, preventing

8

But even if he had alleged such facts or had standing, federal criminal law clearly preempts state criminal law.  *See* 21 U.S.C. § 903 (providing for preemption where "there is a positive conflict between [a provision of the CSA] and that State law such that the two cannot consistently stand together").  Accordingly the United States Supreme Court has long held that Congress has the power to prohibit and criminalize the cultivation and use of marijuana even if such cultivation and use is conducted in compliance with state laws permitting cultivation and use of marijuana for medical purposes.  *See Gonzales v. Raich*, 545 U.S. 1 (2005).  Krumm has failed to state a cognizable claim for relief against the Attorney General or the Acting United States Attorney.

### C.  **Krumm lacks standing to force the DHHS, the NIH, or the NIDA to conduct tests or supply marijuana for testing in the manner he would like.**

To establish constitutional standing, Krumm must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3)

---

distribution to minors, and preventing the cultivation of marijuana on public lands – priorities that we historically have focused on for many years – and also notes that we will continue to rely on state and local authorities to effectively enforce their own drug laws as we work together to protect our communities. . . . . In these instances and historically, the Department has not devoted our finite resources to prosecuting individuals whose conduct is limited to possession of marijuana for personal use on private property.

March 4, 2014 Joint Statement.  Clearly, given this unambiguous  policy statement, and the DOJ's practice, Krumm can have no reasonable fear that he could suffer "serious legal repercussions" and federal criminal prosecution for obtaining medical marijuana from state-licensed dispensaries and smoking it on private property to reduce his pain as prescribed by his physician.  Nor is there any credibility whatsoever in his hyperbole that maintaining marijuana on Schedule I has caused the deaths of "countless thousands of Americans" and the suffering of "millions".  Compl. at ¶ 40, ¶ 52.  As he states in his Complaint, Krumm prescribes marijuana to almost 1000 VA patients for PTSD who are in the state medical-marijuana program, and the VA has permitted veterans to participate in that program.  *See* Compl. at ¶45,¶ 70.  And according to him, "hundreds of thousands of patients" participate in medical-marijuana programs nationwide.  Compl. at ¶ 35.

it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000). He "must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

Krumm first criticizes the DHHS's published review of the Gettman petition, complaining that it ignored studies and statements that he thinks are valid. See Compl. at ¶¶ 29-32. But as noted above, the review of the denial of the Gettman petition cannot be reconducted by this Court. Krumm further complains that the NIH "refuses to fund [FDA-approved] Cannabis research proposals looking for medicinal benefits, and NIDA denies access to supplies of whole-plant cannabis to conduct FDA-approved research protocols that have outside sources of funding" and that NIDA refuses to permit "others to cultivate cannabis for research" Compl. at ¶ 33. But Krumm does not allege that he has submitted an FDA-approved smoked-marijuana study that the NIH has refused to fund or for which the NIDA has refused to supply whole-plant marijuana. Therefore, he has not alleged an injury to him that is fairly traceable to the failures of the NIH and NIDA and that may be addressed by a favorable decision of this Court. And although Krumm contends that he is ultimately injured by the agencies' failures to fund studies, where "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). In addressing the Gettman-petition's claims, which are the same as Krumm's current claims, the D.C. Circuit held that "it appears that adequate and well-controlled studies are wanting not because they have been foreclosed but because they have not been completed." *Americans for Safe Access,* 706 F.3d at 452. Further, in light of the DHHS's 2006 findings that marijuana's chemistry was not "known and reproducible"

as there had not been "a complete scientific analysis" of its components; that there was "a material conflict of opinion among experts" as to medical safety and efficacy, thereby precluding a finding that qualified experts accepted marijuana as a medicine; and that the raw research data typically were not available in a format that would allow "adequate scientific scrutiny of whether the data demonstrate safety or efficacy," *see id.* at 442, Krumm can only speculate about what the funded research would show if it were conducted.  Krumm does not have standing to attempt to force the DHHS, the NIH, or the NIDA to fund and provide marijuana for smoked-marijuana studies.

The Court rejects Krumm's contention that his claims against the heads of the agencies fall under 44 U.S.C. § 3516.  *See* Doc. 19 at 4.  As the Defendants point out, this statute "neither cures the speculative nature of Plaintiff's claims of injury by NIH and NIDA nor provides him a separate claim."  Doc. 22 at 11.  *See Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006) ("By its terms, [44 U.S.C. § 3516] creates no legal rights in any third parties.  Instead, it orders the Office of Management and Budget to draft guidelines concerning information quality and specifies what those guidelines should contain.  Because the statute upon which appellants rely does not create a legal right to access to information or to correctness, appellants have not alleged an invasion of a legal right and, thus, have failed to establish an injury in fact sufficient to satisfy Article III.") (footnote omitted).

### D.  Krumm has not stated a cognizable RFRA claim.

> RFRA allows religious adherents to challenge government activities that encroach on their beliefs.  To make out a prima facie RFRA defense, a criminal defendant must show by a preponderance of the evidence that government action (1) substantially burdens (2) a religious belief, not merely a philosophy or way of life, (3) that the defendant sincerely holds.  *United States v. Meyers,* 95 F.3d 1475, 1482 (10th Cir.1996).  If a defendant makes that showing, it falls to the government to show that the challenged action is justified as the least restrictive means of furthering a compelling governmental interest. *Id.*

11

*United States v. Quaintance*, 608 F.3d 717, 719 -20 (10th Cir. 2010). Krumm states that, as

> the Bishop of Medicine for the Zen Zion Coptic Orthodox Church, which believes that Cannabis is the "Tree of Life", given for the healing for the Nations[, h]e wishes to use Holy Anointing Oil made from Cannabis, in the same way Jesus used Holy Anointing Oil made from Cannabis to work "miracles of healing." The inappropriate scheduling of Cannabis interferes with [his] right to use Cannabis as a medication and as a sacrament. . . . Plaintiff asserts a Religious Freedom claim because he is forbidden from making and using Holy Anointing Oil in his duties as Bishop . . . .Schedule I drugs such as Peyote and Ayahuasca are exempted for religious use, but petitioner is not requesting such a broad exemption at this time. . . . He simply wants the Attorney General and DEA to obey the clear statutory language of the law and remove Cannabis from Schedule I of the CSA.

Compl. at ¶¶ 46-54. Based on Krumm's "arguments," *see* Compl. at 22-28 and requests for relief, *see id.* at 31-32, it is clear that Krumm is not challenging the enforcement of the CSA as to himself alone, which is the context in which a RFRA claim is appropriate. Rather, he is bringing a facial challenge to marijuana's placement on Schedule I, a challenge regarding which his personal religious beliefs have no bearing. The Court concludes that Krumm has failed to state a cognizable claim under RFRA[3].

### E. Krumm's equal-protection claim has already been decided against him.

Krumm states that "Defendants supply four U.S. citizens with 9-12 ounces of cannabis every month for medical use with no fear of legal repercussions. There is no reason Plaintiff should not be afforded these same freedoms." Compl. at ¶ 54. He states that he is asserting an "equal protection claim" based on these facts. *Id.* at ¶ 50. As set forth above, however, Krumm

---

[3] The Court notes that Section 802(16) defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16). But "[s]uch term does not include . . . oil . . made from the seeds of such plant, . . . or any other compound, manufacture, salt, derivative, mixture, or preparation of such . . . oil." 21 U.S.C. § 802(16). Therefore, Krumm's claim that he is statutorily prohibited from using marijuana oil to anoint the members of his alleged church appears to be unfounded.

has already fully litigated this issue and it has been decided against him. *See Kuromiya*, 78 F. Supp. 2d at 368, 372-73 (holding that "the government had a rational basis for its decision not to supply marijuana to the plaintiffs [including Krumm] through the compassionate use program" even though it continued to permit use and supply marijuana to a few patients who had been in the program for a long time).

### F. Krumm has no fundamental right to smoke marijuana or to use it to treat his patients.

Krumm attempts to allege a substantive due-process right by contending that he and other individuals who desire to smoke marijuana have a "fundamental right to maintain bodily integrity" and "avoid unnecessary pain and suffering" by doing so. Compl. at ¶¶ 51-52. As noted above, Krumm has previously brought a substantive-due-process claim based on the general right to privacy, which was rejected and is *res judicata* on the issue. *See Kuromiya*, 37 F. Supp. 2d at 726 (holding that "there is no fundamental right of privacy to select one's medical treatment without regard to criminal laws, and courts have consequently applied only rational review to regulations affecting these matters"). He could have based his arguments on the other general fundamental rights that he raises here, but he did not, and he is now precluded from doing so. *See Allen v. McCurry,* 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") But even if he could bring such a claim, the Supreme Court has

> always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due

> Process Clause be subtly transformed into the policy preferences of the Members of this Court.

*Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) (internal quotation marks and citations omitted). To find a new substantive-due-process right, the Court requires a "careful description of the asserted fundamental liberty interest" and decides whether the asserted liberty interest, as described, is "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 721 (internal quotation marks omitted). In *Glucksberg,* three terminally-ill patients challenged a state law prohibiting assisted suicide. They argued that they had a fundamental right to choose medical treatment that included assistance in committing suicide. The Court rejected this argument, stating that, in previously holding that individuals have a fundamental "right to refuse unwanted medical treatment," that holding could not "be some-how transmuted into a right to assistance in committing suicide." *Id.* at 726. Applying the fundamental-interest analysis, the Tenth Circuit and many other courts have held that smoking, using, possessing, or manufacturing marijuana is not a fundamental right. *See, ex*, *United States v. Moralez*, No. 92-1118, 986 F.2d 1430, 1992 WL 401581, *1 (10th Cir. Dec. 21, 1992) ("the possession of marijuana [is not] a fundamental constitutional right"); *Raich v.Gonzales*, 500 F.3d 850, 864-66 (9th Cir. 2007) (holding that, where the plaintiff's asserted fundamental right was "the right to use *marijuana* to preserve bodily integrity, avoid pain and preserve her life," that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering" because the alleged right was neither "fundamental" nor "implicit in the concept of ordered liberty"); *United States v. Washington*, 887 F. Supp. 2d 1077, 1102 (D. Mont. 2012) (accord); *U.S. v. White Plume*, 447 F.3d 1067, 1074-76 (8th Cir. 2006) (holding that there is no substantive due process right to farm

14

marijuana); *United States v. Mass*, 551 F. Supp. 645, 647-48 (D.N.J. 1982) ("Smoking marijuana receives no explicit or implicit constitutional protection.  The act of smoking does not involve the important values inherent in questions concerning marriage, procreation, or child rearing.  Moreover, its use predominantly as a "recreational drug" undercuts any argument that its use is as important as, e.g., use of contraceptives."); *Nat'l Org. for Reform of Marijuana Laws (NORML) v. Bell,* 488 F. Supp. 123, 134 n.28, 141 (D.D.C.1980) (collecting cases "rejecting plaintiff's argument that private possession of marijuana is a fundamental or constitutional right"); *Louisiana Affiliate of NORML v. Guste,* 380 F. Supp. 404, 407 (E.D.La.1974), *aff'd,* 511 F. 2d 1400 (5th Cir.), *cert. denied,* 423 U.S. 867 (1975) ("[t]he right of plaintiff to possess marijuana in his own home can under no factual or legal interpretation be classified as fundamental or implicit in the concept of ordered liberty.").  Krumm has wholly failed to make the requisite showing to satisfy the fundamental-rights analysis.

Because Krumm (1) seeks relief for which this Court has no subject-matter jurisdiction to grant; (2) attempts to raise claims and issues that have already been decided against him; and (3) fails to state sufficient factual allegations "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or (4) to otherwise state cognizable federal claims, the Court will dismiss his Complaint.  And because this is the third time Krumm has brought litigation in the federal district courts regarding the validity of the placement of marijuana on Schedule I, the Court will restrict him from filing any future similar suits in this District.

**THEREFORE**, it is ordered that Defendants' motion to dismiss [Doc.16] is GRANTED; and Bryan A. Krumm shall not file, and the Clerk of the Court shall not accept, any future lawsuits brought by him against any of the Defendants or their successors regarding the

placement of marijuana in Schedule I of the CSA or for review of the denial of a petition requesting the rescheduling of marijuana.

_____
**UNITED STATES DISTRICT JUDGE**